UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVELYN KELLY, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-1590-B |
| | § | |
| ST. LUKE "COMMUNITY" UNITED METHODIST CHURCH, HENRY MASTERS, in his official and individual capacity, and BERNICE WASHINGTON, in her official and individual capacity, | § § § § § § § | |
| | § | |
|    Defendants. | § | |

## MEMORANDUM ORDER AND OPINION

Before the Court is Defendants St. Luke "Community" United Church, Henry Masters, and Bernice Washington's (Defendants) Motion for Summary Judgment (Doc. 17). For the reasons stated below, Defendants' Motion is **GRANTED in part and DENIED in part.** The Court **GRANTS** Defendants' Motion as to Plaintiff's Title VII retaliation and Consolidated Omnibus Budget Reconciliation Act (COBRA) claims, but the Court **DENIES** it as to Plaintiff's claims for (1) age and sex discrimination under the Texas Commission on Human Rights Act, codified as Chapter 21 of the Texas Labor Code [hereinafter Chapter 21]; (2) defamation; (3) fraud and misrepresentation; and (4) negligence. With no federal claims remaining, the Court **REMANDS** this case to the 95th Judicial District Court in Dallas County, Texas.

# I.

# BACKGROUND[1]

This action arises from Plaintiff Evelyn Kelly's (Kelly) allegation that her employer, St. Luke "Community" United Church (St. Luke or the church)—through Reverend Henry Masters (Masters) and Staff Pastor Parish Relations Committee (SPPRC) Chair Bernice Washington (Washington)—dismissed her because of her age and sex (violating Chapter 21), and in retaliation for participating in an underlying sexual misconduct/harassment lawsuit in which the church was involved (violating Title VII).[2]

Evelyn Kelly was hired as St. Luke's Director of Operations and Human Resources (DOHR) in 2001. *See* Doc. 19, Defs.' App. 60, Aff. of Sharon Larkin ¶ 11; Doc. 39-2, Pl.'s App. 2, Decl. of Evelyn Kelly [hereinafter Kelly Decl.] ¶ 2. According to Kelly, she was "responsible for directing the overall day to day operation of the church," supervising and coordinating a variety of programs, developing and submitting a number of church policy guidelines, managing projects, and determining budgets, among other obligations. Doc. 39-1, Pl.'s Resp. to Mot. Summ. J. [hereinafter Pl.'s Resp.] ¶ 2. She served the church until February 12, 2013, when Masters dismissed her. Doc. 11, Pl.'s Second Am. Compl. [hereinafter Am. Compl.] ¶ 19; Doc. 18, Defs.' Br. in Support of Mot. for Summ. J. [hereinafter Mot. Summ. J] ¶ 1. The parties disagree about why he did that.

Defendants insist Masters dismissed Kelly only because St. Luke eliminated her position. Doc.

---

[1]The Court takes its factual account from the uncontested facts contained in the summary judgment record. Any contested fact is identified as the allegation of a particular party.

[2] As indicated above, Kelly also alleges defamation; fraud and misrepresentation; negligence, and COBRA violations. But because the Court remands her state law claims—and because Kelly does not explain the nature of her COBRA claims in her response—the Court omits a detailed account of the facts surrounding them.

18, Mot. Summ. J. ¶ 1. In support, they allege the following: from late 2012 into early 2013, the church was undergoing a transition. *Id.* ¶ 32. Its former pastor had recently resigned, attendance had dropped considerably, and revenue had decreased by more than a third. *Id.* To respond to these changes, Masters, who came on board as the new pastor in July 2012, *id.* ¶ 33, did two things. First, he tried to reduce church costs and expenses, in part through personnel reductions. *Id.* Then, he tried to emphasize the church's program ministries and develop more comprehensive services. *Id.* ¶ 34. To accomplish both, he proposed a staff reorganization plan. *Id.* This included (1) eliminating the DOHR position, (2) creating a Church Administrator position, and giving that person fewer responsibilities and less pay than the DOHR, (3) establishing a part-time Director of Evangelism position, and (4) "[using existing] full-time ministerial staff to work with internal church committees and programs." *Id.* ¶¶ 34–36.³ This would "enhance the delivery of services to [St. Luke's] members and members of the community[,] as well as provid[e] more assistance for the day to day operations of the church." *Id.* ¶ 34. Masters shared his plan with the SPPRC on January 31, 2013. *Id.* ¶ 36. The next day, he and SPPRC Chair Washington met with Kelly, gave her a letter explaining that her position was being eliminated, and dismissed her, effective February 12, 2013. *Id.* ¶ 37.

Kelly's account differs. She alleges that she was dismissed because of (1) her age and gender (which, if true, would violate Chapter 21); and/or (2) her decision to oppose St. Luke's alleged discriminatory practices (which, if true, would violate Title VII's anti-retaliation provisions). Doc.

---

³ The record also reflects that St. Luke's eliminated two summer intern positions in 2013. See Doc. 19-1, Defs.' App. 60, Ex. B, Aff. of Sharon Larkin ¶ 5; *id.* at 91, Ex. B-6, Employee Termination Report.

11, Am. Compl. ¶¶ 26–35.[4]

As to her retaliation claim, Kelly elaborates upon her Complaint's fairly sparse allegation—that she "oppos[ed] and complain[ed] of unlawful discriminatory practices," Doc. 11, Am. Compl. ¶ 34—here in her response to Defendants' summary judgment motion. Now, she contends that she participated in two sexual harassment and misconduct investigations/lawsuits concerning former Pastor Tyrone Gordon. Doc. 39-1, Pl.'s Resp. at 30–31. She also says that she (1) told Masters in January 2013 that "he could not hire employees without a background check to work with children"), Doc. 39-1, Pl.'s Resp. 4; (2) met with him to express concerns with how he spoke to her on December 10, 2012, Doc. 39-2, Pl.'s App. 4, Kelly Decl.; (3) wrote a note to him to convey the same, Doc 39-1, Pl.'s Resp. 32 (citing Doc 39-2, Pl.'s App. 81–83, Deposition of Henry Masters); and; (5) participated "in the internal EEO investigation" and "opposed the corrective action she received," Doc 39-1, Pl.'s Resp 34 (citing Doc 39-2, Pl.'s App. 4, Kelly Decl.; *id.* at 42, EEOC Charge of Discrimination). She believes these activities, collectively, caused Masters to dismiss her.

Kelly filed an original version of her Complaint in the 95th Judicial District Court, Dallas County, Texas and served Defendants with it on or about February 1, 2014. Doc. 1, Notice of Removal ¶ 1; Doc. 1-12, Ex. C-8, Original Pet.[5] On April 4, 2014, she amended it, now asserting (1) sex and age discrimination under Chapter 21; (2) defamation; (3) fraud and misrepresentation; and (4) negligence; as well as (5) Employee Retirement Income Security Act (ERISA); (6) Consolidated

---

[4] Because the Court addresses only whether Kelly has engaged in protected activity under Title VII's anti-retaliation provisions, and whether Defendants violated COBRA, there is no reason to recount the facts implicated by any of her other claims, including her Chapter 21 age and gender discrimination claims.

[5] In her Original Petition, Kelly asserted only fraud and misrepresentation, Doc. 1-12, Ex. C-8 ¶¶ 26–28, negligence, *id.* ¶¶ 29–31, and defamation *id.* ¶¶ 32–36.

Omnibus Budget Reconciliation Act (COBRA); and (7) Due Process violations. Doc. 1-5, Ex. C-1, First. Am. Pet. ¶¶ 27–49.[6] Kelly has since dropped her ERISA and Due Process claims, *see* Doc. 39-1, Pl.'s Resp. 3.

On April 30, 2014, Defendants removed this case to federal court, Doc. 1, Notice of Removal. On May 8, 2015, they moved for summary judgment. Doc. 17, Defs.' Mot. Summ. J. The Court now considers their Motion.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant ultimately bears the burden of proof at trial, however, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325).

---

[6] Kelly also amended her Complaint again, in this Court, on December 15, 2014, though she asserts the same causes of action here as in her First Amended Complaint. Doc. 11, ¶¶ Am. Compl., 26–51.

In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

### III.

### ANALYSIS

Defendants initially moved for summary judgment on each of Kelly's claims. Kelly opposes summary judgment as to her claims for: (1) age and gender discrimination under Chapter 21; (2) retaliation under Title VII; (3) defamation; (4) fraud and misrepresentation; (5) negligence; and (6) COBRA violations. As discussed above, Kelly has since dropped her ERISA and Due Process claims. Doc. 39-1, Pl.'s Resp. 3.

Because the Court finds St. Luke, Masters, and Washington are entitled to summary judgment on Kelly's two federal claims—retaliation under Title VII and the COBRA violations—no federal question remains.[7] Accordingly, this Court does not reach Kelly's remaining claims and instead **REMANDS** them to the 95th Judicial District Court, Dallas County, Texas, where she originally brought her suit.

---

[7] Kelly specifically indicates that she brings her both of her discrimination claims under the Texas Commission on Human Rights Act (TCHRA), now codified as Chapter 21 of the Texas Labor Code, Doc. 11, Am. Compl. ¶ 27, rather than Title VII (for gender discrimination) and/or the Age Discrimination in Employment Act (ADEA) (for age discrimination). Accordingly, the Court does not construe her discrimination claims as implicating a federal question. *See Williamson v. Pay & Save, Inc.*, No. EP-15-CV-237-PRM, 2015 WL 5920017, at *3 (W.D. Tex. Oct. 9, 2015) (holding that plaintiff, as "master of her complaint," chose to "alleg[e] claims pursuant to the Texas Labor Code, and not Title VII (the federal analog to Chapter 21 of the Texas Labor Code) . . . [thus] defeating Defendant's opportunity to remove." *Id.* (citations omitted).

A.   *Retaliation Under Title VII*

Defendants move for summary judgment on Kelly's Title VII retaliation claim, first asserting that she cannot establish a *prima facie* case. Doc. 18, Mot. Summ. J. ¶ 2 Kelly, in turn, points to evidence that she: participated in sexual misconduct investigations and lawsuits concerning St. Luke's former pastor, criticized Masters for his tone with her, chided him for deciding to allegedly hire church staff without first conducting a background check, and participated in the EEO investigation related to her own discharge. Doc. 39-1, Pl.'s Resp., 30–34. This, she suggests, was why Masters dismissed her, and thus her termination constitutes retaliation. *Id.*

The *McDonnell Douglas* burden-shifting framework applies not only to sex and age discrimination claims, but to retaliation claims, too. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (detailing framework); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001) (applying it to retaliation claims). Under this framework, a plaintiff must first make out a *prima facie* retaliation case. *Montemayor,* 276 F.3d at 692 . If she does, the burden shifts to her employer, who must "produce[] evidence of a legitimate, nonretaliatory reason for its decision." *Evans v. City of Houston,* 246 F.3d 344, 354–55 (5th Cir. 2001). If the employer can do so, the burden shifts back to the employee, who must then show that her employer's stated reason was pretextual. *Id.; McDonnell Douglas Corp.,* 411 U.S. at 804.

To make out a *prima facie* retaliation case under Title VII, a plaintiff must show (1) that she engaged in a protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005). The Court now considers whether Kelly has made such a case.

1. <u>Prima Facie Case</u>

   i. *Plaintiff did not engage in a protected activity*

"The Title VII antiretaliation provision has two clauses, making it 'an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' The one is known as the 'opposition clause,' the other as the 'participation clause.'" *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009)(citing 42 U.S.C. § 2000e–3(a)).[8]

Kelly insists both apply here. But she is not clear in her response about *what* purportedly protected activity triggers either. Doing its best to understand her argument, the Court assumes Kelly means to point to the following events:

> (1) "[P]articipat[ing] in two sexual harassment/misconduct investigations and trial preparation for . . . [former] Pastor Tyron Gordon" from "October 2012 . . . until . . . February 1, 2013." Doc. 39-1, Pl.'s Resp. 30. To substantiate her allegation, Kelly cites her declaration, where she alleges that, "[a]s Director of Operations," she was: (i) served with the lawsuit against St. Luke and Gordon; (ii) "required to meet with St. Luke's attorneys, the leaders of the church[,] and the insurance company [in order] to discuss th[at] case"; and (iii) "responsible for tendering relevant documents in preparation for trial against the chrurch." Doc. 39-2, Pl.'s App 3, Kelly Decl. ¶ 8.
>
> (2) Meeting with Masters to express concerns with how he spoke to her (December 10, 2012). Doc. 39-2, Pl.'s App. 4, Kelly Decl. ¶ 11.
>
> (3) Writing a note to Masters to again express her displeasure with how he spoke to her (December 2012). Doc 39-1, Pl.'s Resp. 32 (citing Doc. 39-2, Pl.'s 81–83).

---

[8] Activity under either is characterized as "protected activity."

(4) "Remind[ing] Rev. Masters that he could not hire employees without a background check to work with children, as a Children's Director and a Youth Director." Doc 39-1, Pl.'s Resp. 30–31 (citing Doc. 39-2, Pl.'s App. 2–3 Kelly Decl.; *id.* at 73, Deposition of Henry Masters (citing irrelevant portions)).

(5) "[E]ngag[ing] in Title VII protected activity . . . [by] participating] in the internal EEO investigation, and further . . . oppos[ing] the corrective action [s]he received." Doc. 39-1, Pl.'s Resp. 34 (citing Doc. 39-2, Pl.'s App. 4, Kelly Decl.; *id.* at 42, EEOC Charge of Discrimination).[9]

As a threshold issue, Defendants insist that the Court cannot consider *any* of these allegations, because "[a] party cannot defeat a motion for summary using an affidavit that impeaches without explanation sworn testimony." Doc. 42, Defs.' Reply 19 (citing *S.W.S. Erectors, Inc. v. Infray, Inc.*, 72 F. 3d 489, 495 (5th Cir. 1996) (citations omitted)). This is true. But the Court does not construe Kelly's declarations here as "impeach[ment] without explanation." In her Complaint, Kelly stated that her "termination [was] for opposing and complaining of unlawful discriminatory practices." Doc. 11, Am. Compl. ¶ 34. What she says here, then, is elaboration. Accordingly, the Court will consider Kelly's declaration, attached to her response to Defendants' summary judgment motion, when considering whether she engaged in protected activity.

Moving to the substance Kelly's factual allegations, the Court finds that only her involvement in the Gordon lawsuit could even *possibly* be construed as a protected activity under Title VII. But before examining that issue in all its nuance, it first turns to the other four instances Kelly cites, none of which come close to counting as protected activity. Nothing about chiding an individual to conduct background checks constitutes "opposi[ng] [] a[] practice rendered unlawful by Title VII."

---

[9] Doing its best to understand what Kelly is trying to get at here, the Court assumes, first, that Kelly's counsel meant to use the pronoun "she," and thus means to refer to Kelly here. That said, it seems that the essence her argument is that Kelly's decision to formally oppose her own termination was what led to Masters to retaliate and dismiss her.

*Crawford*, 555 U.S. at 276 (2009) (quoting § 2000e–3(a)). Nor does the fact that Kelly took umbrage with Masters' for an allegedly disrespectful tone, whether verbally or in writing, come within the statute's protective ambit. And in so far as this Court is correct to interpret Kelly's fifth argument as "Kelly's decision to oppose her own termination constitutes protected activity under Title VII[,] and that was what caused Masters to dismiss her," the Court disagrees once more. Kelly could not have opposed her own dismissal until *after* it occurred, making it unlikely that Masters had decided to retaliate against her for something that had not yet happened.

That established, the Court now examines whether Kelly's participation in the Gordon lawsuit could be construed as protected activity under *either* the Opposition or Participation Clause of Title VII.

        *a.*      *The Opposition Clause*

Kelly's involvement in St. Luke/Gordon lawsuit does not fall within Title VII's protections. While it may be true that Gordon was being sued for sexual misconduct and harassment, "practice[s] made . . . unlawful . . . by this subchapter [Title VII]," *see Crawford*, 555 U.S. at 276 (2009) (quoting § 2000e–3(a)), Kelly's limited activity in relation to the suit is not *opposition,* even by *Crawford*'s liberal definition. Indeed, one can oppose by "responding to someone else's question [regarding an investigation into unlawful activity under Title VII] just as surely as [] provoking the discussion [about such activity]," *Crawford,* 555 U.S. at 277–78, but here, there is simply nothing to indicate Kelly did so. In her declaration, Kelly alleges only that: (1) she was served with the lawsuit; (2) required to meet with the church's attorneys, leaders, and insurance company to discuss the case, and (3) tendered relevant documents to prepare for trial. Doc. 39-2, Pl.'s App. 3, Kelly Decl. ¶ 8.

Kelly gives the Court no details regarding the *substance* of any of these conversations or documents. Rather, she says only that, throughout the investigation, she was "vocal in [her] concerns on how the lawsuits affected the moral standards and integrity of St. Luke," *id.* ¶ 8, and that, while on medical leave in December 2012 or January 2013, she "discussed with Masters the ongoing lawsuit against the church," *id.* at 4 ¶ 14.

That said, despite *Crawford*'s liberal construction of the word, Kelly has still not shown that she opposed an unlawful employment practice under Title VII. *Cf. Crawford*, 555 U.S. at 273 (plaintiff gave human resources officer "an ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee . . . [a] description of the louche goings-on [that] would certainly qualify in the minds of reasonable jurors as 'resist[ant]' or 'antagoni[stic]' to [the harassing party's] treatment [of employees]"); *Lopez v. Donahoe*, 94 F. Supp. 3d 845, 859 (S.D. Tex. 2015) (plaintiff alleged he "signed a letter to one or more of [harasser's] supervisors complaining of [harasser's] allegedly racist behavior"); *Garcia v. MAC Equip., Inc.*, No. CIV.A. H-09-902, 2011 WL 4345205, at *8 (S.D. Tex. Sept. 15, 2011) (finding record contained evidence showing "[Plaintiff] reported [fellow-employee's] allegations as one of several instances of [harasser's] inappropriate behavior and . . . communicated his [own] view that [harasser's] behavior had been inappropriate").[10]

Even though the bottom rung of the Opposition Clause's ladder is a low one—all one must do is give a "[d]isapproving description[] of inappropriate behavior [since this is alone] can be

---

[10] In each case cited in this paragraph, courts have found plaintiff provided enough evidence to survive summary judgment on the first element of a *prima facie* retaliation case under Title VII.

protected activity," *see Garcia*, 2011 WL 4345205, at *8 (citing *Crawford*, 555 U.S. at 276)—Kelly has yet to ascend to it. Her declaration is simply devoid of any facts suggesting what the *substance* of her communications regarding the Gordon lawsuit may have been.[11]

### b. The Participation Clause

Kelly finds no shelter under the Participation Clause, either. Under that portion of Title VII, in order to receive antiretaliatory protection, one is required to demonstrate that she participated, in any manner, in "an investigation, proceeding, or hearing under this subchapter," meaning Title VII. *Crawford*, 555 U.S. at 274 (citing 42 U.S.C. § 2000e–3(a)). Kelly has not done so. Rather, she characterizes the lawsuit against St. Luke and Gordon in which she participated only as one for sexual harassment and sexual misconduct. *See* Doc. 39-1, Pl.'s Resp. 5 ¶ 5 (describing suit as "alleg[ing] various claims[,] including sexual harassment and sexual misconduct"); *id.* at 30 (noting Kelly "participated in the two sexual harassment/sexual misconduct investigations and trial preparation for . . . Pastor [] Gordon"); Doc. 39-2, Pl.'s App. 3, Kelly Decl. ¶ 7 (noting "[t]he lawsuit alleged various claims including sexual harassment and sexual misconduct against Pastor Gordon").

---

[11] Her concern about how the lawsuit would affect St. Luke's moral standards, *see* Doc. 39-2, App. 3, Kelly Decl. ¶ 8, is not enough to constitute opposition. Also, the Court recognizes that, even if Kelly had plead sufficient facts to indicate opposition, the "manager rule"—which requires employees to "step outside" their managerial duties when opposing unlawful employment practices in order to receive protection—might nevertheless preclude her from invoking Title VII's anti-retaliatory provisions. The circuit courts are split on whether the rule applies in Title VII retaliation proceedings. *See Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) (declining to apply case manager rule to Title VII retaliatory claims); *DeMasters v. Carilion Clinic*, 796 F.3d 409 (4th Cir. 2015). (same); *cf. Brush v. Sears Holding Corp.*, No. 9:09-cv-81290-KLR, (11th Cir. March 26, 2012) (unpublished) (applying manager rule to Title VII retaliatory claims); *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F. 3d 39 (assuming without deciding that the case manager rule applies in Title VII retaliation cases). The Fifth Circuit has not yet weighed in, though it did apply the manager rule in an FLSA context. *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617 (5th Cir. 2008).

Title VII is not the only vehicle for bringing sexual harassment and sexual misconduct claims. S*ee* Tex. Labor Code Ann. § Sec. 21.106; *see also Green v. Indus. Specialty Contractors, Inc.,* 1 S.W.3d 126, 131 (Tex. App. 1999) (detailing requirements to establish a sexual harassment claim based on hostile work environment). For that reason, this Court cannot assume the sexual harassment/misconduct proceeding against Pastor Gordon that Kelly refers to was brought under Title VII rather than a Texas state statute. Kelly offers nothing that would change this. Accordingly, she cannot invoke Title VII's Participation Clause for protection here.

Kelly has failed to prove that she engaged in "protected activity" under either Title VII's Opposition or Protection Clause. Accordingly, she has failed to establish a *prima facie* retaliation case against Defendants. For that reason, the Court need not address whether she has proved the other elements of a prima facie case (adverse employment action, causal link), or whether Defendants' proffered legitimate, business reason for dismissing Kelly was pretextual. Instead, the Court hereby **GRANTS** summary judgment in favor of Defendants on Kelly's Title VII retaliation claim.

B.    *COBRA Violations*

In her Complaint, Kelly alleges that St. Luke violated COBRA by failing to give her notice regarding her benefits and continuation of coverage. Doc. 11, Am. Compl. ¶ 36. In her response, she says nothing about this claim. While this is not enough for the Court to dismiss it, it will accept Defendants' evidence on this point as undisputed. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

Defendants have shown that (1) St. Luke is a tax exempt organization, s*ee* Doc. 19, Defs.' App. 97–103, Articles of Incorporation; (2) that provided employees a group benefit plan, *see id.* at 60*,* Aff. of Sharon Larkin ¶ 8; (3) in which Kelly participated, *see id.* at 105–6, Health Insurance Premium Notice for Evelyn Kelly. Thus, St. Luke is exempt from COBRA's requirements. *See* U.S. Department of Labor, Employee Benefits Security Administration, Frequently Asked Questions, Q3, available at *http://www.dol.gov/ebsa/faqs/faq-consumer-cobra.html.*

For the above reasons, the Court hereby **GRANTS** summary judgment in favor of Defendants on Kelly's COBRA claim.

C.   *Justification for Remand*

Having determined Defendants are entitled to summary judgment on Kelly's Title VII retaliation and COBRA claims, there are no longer any federal issues implicated by this case. Kelly's remaining claims are: (1) age and sex discrimination under Chapter 21; (2) defamation; (3) fraud and misrepresentation; and (4) negligence. All fall under state law. Thus, the Court considers the statutory factors designed to guide it in its decision whether to exercise supplemental jurisdiction over these claims. It may decline to do so if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Here, the Court has dismissed both claims over which it had original jurisdiction: the Title VII retaliation and COBRA claims. For that reason, it is not inclined to exercise its supplemental jurisdiction over the remaining state law claims. *See Welch v. Jannereth*,

No. 11-41035, at 3 (5th Cir. Nov. 7, 2012) (per curiam) (unpublished) (affirming district court's decision to not exercise supplemental jurisdiction under similar circumstances).

But before it makes that decision, the Court considers whether "judicial economy, convenience, fairness, and comity" justifies remand, or, rather, warrants retaining the case. *See id.* (quoting *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002)). As the Court has not expended a substantial amount of time and resources conducting research or reviewing parties' briefing and appendices with respect to their state law claims, this factor weighs in favor of remand, too.

Accordingly, the Court hereby **REMANDS** Kelly's remaining state law claims to the 95th Judicial District Court in Dallas County, Texas, a forum better equipped to handle the remainder of this case.

## IV.

## CONCLUSION

For the reasons provided above, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment. The Court **GRANTS** Defendants' Motion as to Kelly's Title VII retaliation and COBRA claims. The Court **DENIES** Defendant's Motion as to Kelly's claims for (1) age and sex discrimination under Chapter 21; (2) defamation; (3) fraud and misrepresentation; and (4) negligence. Accordingly, the Court **REMANDS** those remaining claims to the 95th Judicial District Court in Dallas County, Texas.

SO ORDERED.

SIGNED: November 10, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE